IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 71,417






GUSTAVO JULIAN GARCIA


v.



THE STATE OF TEXAS






ON DIRECT APPEAL


FROM COLLIN COUNTY






 Hervey, J., delivered the opinion of the Court in which Keller, PJ.,
Meyers, Womack, Keasler, Holcomb and Cochran, JJ., joined. Price and Johnson,
JJ., concurred.



O P I N I O N



 In January of 1992, appellant was convicted of capital murder. Tex. Penal Code Ann. §
19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure Article 37.0711, sections 3(b) and 3(e), (1) the trial judge sentenced appellant to death. Art.
37.0711 § 3(g). (2) Direct appeal to this Court is automatic. Art. 37.0711 § 3(j). Appellant's conviction
and death sentence were originally reversed and remanded. Garcia v. State, 919 S.W.2d 370 (Tex.
Crim. App. 1994). The State's motion for rehearing was granted and the judgment and sentence of the
trial court was affirmed. Garcia v. State, 919 S.W.2d 370 (Tex. Crim. App. 1996) (op. on reh'g.). 
Appellant then filed an application for writ of habeas corpus in federal court. The Texas Attorney General
confessed error in that case and the United States District Court for the Eastern District of Texas granted
habeas relief. Garcia v. Johnson, Civil Action No. 1:99 cv 134 (delivered September 26, 2000). A new
punishment hearing was conducted and appellant was sentenced to death. Appellant raises twenty-six
points of error pertaining to his latest punishment hearing. We affirm.

 In his first point of error, appellant claims the trial court erred in allowing the State to present an
opening statement at the punishment phase of trial over his objection. Appellant argues that such procedure
violates Articles 36.01 and 37.0711, as well as this Court's decision in Penry v. State, 903 S.W.2d 715
(Tex. Crim. App. 1995). While Article 36.01 sets out the order of proceedings at the guilt/innocence
portion of the trial, that article does not apply to the punishment phase. See Penry, 903 S.W.2d at 760. 
Article 37.0711 is silent as to whether the State or the defendant has a right or is prohibited from making
an opening statement. Cf. Arts. 37.07, 37.071 (no mention of procedure regarding opening statements);
Penry, 903 S.W.2d at 760 (noting Article 37.071's silence about opening statements). And nothing in
Penry indicates that the State is prohibited from presenting an opening statement at the punishment phase. 
See Penry, 903 S.W.2d at 760. The appellant in Penry complained that the trial court erred in denying
his request to make an opening statement after the State chose not to give an opening statement at his re-trial on punishment. Id. This Court found that "even if Article 36.01 is applicable at the punishment
phase," a defendant is allowed to make an opening statement only when the State does so first. Id.

 Here, the trial court permitted both the State and appellant to present opening statements. Thus,
this case differs from those where the trial court prohibits one party from making an opening statement. 
See id. (citing Farrar v. State,784 S.W.2d 54, 56 (Tex. App.--Dallas 1989, no pet.); see also, Arriaga
v. State, 804 S.W.2d 271, 272-73 (Tex. App.--San Antonio 1991, pet ref'd); Taylor v. State, 825
S.W.2d 518, 519 (Tex. App.--Houston [1st Dist.] 1991, pet. ref'd); Twine v. State, 929 S.W.2d 685,
686-87 (Tex. App.--Eastland 1996), pet. dism'd, improvidently granted, 970 S.W.2d 18 (Tex. Crim.
App. 1998) (holding it was error to deny defense opportunity to give opening statement after State's
opening argument). Appellant's first point of error is overruled.

 In his second point of error, appellant argues the trial court erred in admitting photographs, an
autopsy report, and a videotape which depict an extraneous murder. He claims admission of this evidence
was unfairly prejudicial, cumulative, and confusing to the jury.

 Appellant was convicted of shooting and killing Craig Turski in the course of committing robbery
at the liquor store where Turski worked. Approximately one month after appellant killed Turski, appellant
and a co-defendant entered a Texaco station and shot Gregory Martin to death in the course of committing
robbery. Martin was shot in the back of the head at point-blank range. The same weapon was used in
both murders. Police were called to the scene of Martin's murder immediately after shots were fired and
appellant was apprehended in the storeroom of the Texaco station where he was hiding.

 Appellant objected to the admission of Exhibits 133, 309, 320, 325, 350, 351, 352, 353, 354,
355, and 316. Exhibits 133, 309, 320, and 325 are color photographs of the Texaco crime scene taken
from different angles. They range in size from 3.5" x 5" to 11" x 14". Exhibits 351 through 355 are
Martin's autopsy photos. Exhibit 351 is a black-and-white photo of Martin's cleaned head, face-up, with
a case number on a card across his chest. Exhibits 352 through 355 are color photos of the back of
Martin's cleaned head which accurately depict the wounds inflicted upon him. Exhibit 350 is the autopsy
report and Exhibit 316 is a twenty-five-minute videotape which shows the Texaco crime scene. At trial,
appellant made relevancy and Rule of Evidence 403 objections to some of these items (crime-scene
photos, videotape) and only Rule of Evidence 403 objections to the others (autopsy report and photos). 
In his brief, appellant complains only that the trial court should have excluded this evidence because its
probative value was substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403.

 Article 37.0711, section 3(a)(1) provides that during the sentencing phase of a capital case,
"evidence may be presented as to any matter that the court deems relevant to sentencing." This includes
proof of an unadjudicated, extraneous offense. See Gentry v. State, 770 S.W.2d 780, 793 (Tex. Crim.
App. 1988). Such evidence, including photographs such as those admitted here, is admissible to show
appellant's propensity for violence and viciousness, facts which directly impact the jury's answers to the
punishment issues. See Long v. State, 823 S.W.2d 259, 273 (Tex. Crim. App. 1991)(discussing
admission of gruesome photographs; holding that photographs of victims from extraneous murders were
properly admitted). Further, when considering the prejudicial nature of photographs, factors for this Court
to consider are the number of exhibits offered, their gruesomeness, their detail, their size, whether they are
in color or black and white, and whether they are close-ups. Long, 823 S.W.2d at 272. 

 The extraneous crime scene photographs are neither close up nor especially detailed, except for
Exhibit 325, a photograph of Martin at the crime scene showing the gunshot wound to his head. But that
particular photo, like the autopsy photos, portrays no more than the gruesomeness of the injuries inflicted. 
See Narvaiz v. State, 840 S.W.2d 415, 429-30 (Tex. Crim. App. 1992). 

 The decision to admit photographs into evidence is within the discretion of the trial court and will
not be disturbed absent an abuse of that discretion. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim.
App.), cert. denied, 534 U.S. 855 (2001). The photographs were both relevant and admissible.

Thus, the trial court did not abuse its discretion in determining that the probative value of the photographs
was not substantially outweighed by any unfair prejudice. Tex. R. Evid. 403. 

 Turning to the videotape, appellant objected at trial, and complains here, only about a specific
portion of the video. The entire twenty-five-minute video surveys the Texaco crime scene. Appellant
complains about a very short portion of the video (approximately one minute) that shows Martin's body. 
This portion reveals the same visual images as Exhibits 133, 309, 320, and 325 discussed above and,
again, merely depicts the gruesomeness of the crime scene as found by the police. Narvaiz v. State, 840
S.W.2d at 429-30. Accordingly, the trial court did not abuse its discretion in determining that the
probative value of the videotape's depiction of Martin's body was not substantially outweighed by any
unfair prejudice. Tex. R. Evid. 403.

 With respect to the autopsy report, appellant does not provide any argument to support his
contention that the admission of these items was unfairly prejudicial. Nor does appellant provide any
argument supporting his claim that all of the complained-of items were cumulative or confusing. As such,
we will not address this portion of appellant's claim because it is inadequately briefed. Tex. R. App. P.
38.1. Appellant's second point of error is overruled.

 In his third point of error, appellant claims the trial court erred in denying his motion for mistrial. 
Specifically, he claims he was he was denied a fair trial when, following the granting of a motion in limine,
a prosecution witness testified to the fact that appellant was previously housed on death row.

 The State called Michael O'Dwyer, Captain of Corrections at the Ellis Unit of the institutional
division of the Texas Department of Criminal Justice, to testify to the events surrounding an escape attempt
by appellant and six other inmates in November of 1998. He testified that, after breaking out of the
building, appellant and four other inmates were apprehended in the perimeter fence. Appellant objects on
appeal to the following portion of O'Dwyer's testimony:

 [PROSECUTOR]: Okay. So they're all on the ground. Were you able to see any
of their demeanor or how they were acting toward you?


 [O'DWYER]: Like I say, at first I didn't recognize any of the inmates. I think that two
of the inmates that I did recognize at the time, and inmate Garcia was one of those
inmates and inmate Guidry was the other. That's when I realized that it was death
row -- excuse me -- that it was high security inmates.


 Appellant objected and requested the jury be instructed to disregard. The court granted appellant's
request and instructed to the jury to disregard O'Dwyer's "partial statement." Appellant's motion for
mistrial was denied.

 It is well settled that improper remarks can be rendered harmless by an instruction to disregard by
the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or
is of such damning character as to suggest it would be impossible to remove the harmful impression from
the jury's mind. Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see Stoker v. State, 788
S.W.2d 1, 13 (Tex. Crim. App. 1989). The uninvited and unembellished reference to death row made by
O'Dwyer was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. 
See Kemp, 846 S.W.2d at 308. Also, we presume the jury follows the court's instructions and there is
no evidence to the contrary in this case. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App.
1998). Appellant's third point of error is overruled.

 In his fifth point of error, appellant claims the trial court erred in excluding the testimony of his
expert psychologist that there were sufficient mitigating circumstances to warrant a life sentence in this case. 
Dr. Gilda Kessner testified in a bill of exception that "there is sufficient information regarding appellant's
background and factors in his background that would warrant a sentence of less than death."

 Texas Rule of Evidence 702 instructs that:

 If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise. 


 There is no doubt that Dr. Kessner is an expert in the field of psychology. However, we have
repeatedly held that only the individual juror can decide what mitigating weight, if any, is to be given to
particular evidence. See, e.g., Curry v. State, 910 S.W.2d 490, 494 (Tex. Crim. App. 1995). "Although
technically a 'factual question,' the mitigation issue is in reality a normative determination left to the
subjective conscience of each juror." Howard v. State, 941 S.W.2d 102, 119 (Tex. Crim. App. 1996). 
In that regard, Dr. Kessner's opinion would not assist the trier of fact, nor is she qualified to give such an
opinion. See Tex. R. Evid. 702. Thus, the trial court did not err in limiting her testimony. Appellant's
fifth point of error is overruled.

 In his sixth, seventh, and eighth points of error, appellant contends the trial court erred by allowing
Royce Smithey, a prison prosecution investigator, to testify as an expert. This Court reviews the trial
court's ruling under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls
outside the zone of reasonable disagreement. Salazar, 38 S.W.3d at 151; Moreno v. State, 22 S.W.3d
482, 487 (Tex. Crim. App. 1999).

 In his sixth point of error, appellant claims Smithey lacked the requisite knowledge of the prison
classification system to be qualified as an expert pursuant to Rule of Evidence 702. Smithey was called
to rebut the implication from appellant's expert that appellant would not pose a future danger in prison
based on the assumption that appellant would most likely be housed in administrative segregation. It was
Smithey's opinion that appellant would pose a future danger because the administrative segregation units
do not function in an ideal manner.

 "The special knowledge which qualifies a witness to give an expert opinion may be derived from
specialized education, practical experience, a study of technical works, or a varying combination of these
things." Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (quoting Penry, 903 S.W.2d at 762). 
The party offering the expert witness, in this case, the State, bears the burden of showing that the witness
is qualified on the specific matter in question. Id. When questioned by the defense about his qualifications
to give such an opinion, Smithey testified that he was a veteran peace officer with twenty-four years of
experience and that at the time of trial, he had been the chief investigator of the Special Prison Prosecution
Unit for thirteen years. He related that his job was to investigate and prosecute felonies committed by
prison inmates and had done so in thousands of cases. He stated that he is familiar with the prison
classification system and at what levels capital murderers can be classified. Further, he is aware of the
security procedures for the administrative-segregation units, having visited them many times. In light of this
testimony, we cannot say the trial court abused its discretion in allowing Smithey to testify as an expert
witness. See id.

 In his seventh point of error, appellant claims Smithey's testimony should not have been admitted
because he did not disclose the underlying facts or data which supported his opinion in violation of Rule
of Evidence 705(a). The underlying facts or data which supported Smithey's opinion were his personal
experiences mentioned above. Although he testified that he failed to bring data to support his opinions,
Smithey nevertheless complied with Rule of Evidence 705(a) by disclosing his personal experiences during
his testimony at trial. Tex. R. Evid. 705(a). Thus, the trial court did not abuse its discretion in allowing
Smithey's testimony. 

 In his eighth point of error, appellant asserts the probative value of Smithey's testimony was
substantially outweighed by unfair prejudice in violation of Rule of Evidence 403, but fails to explain why
that is so. The issue in question was whether appellant posed a future danger. Appellant first presented
testimony from Dr. Walter Quijano as an expert on prison classification. Quijano testified that, because
of appellant's prior attempted prison escape, he would be classified as a security risk that required him to
be housed in administrative segregation should he receive a life sentence. Quijano then presented a video
to show that inmates within administrative segregation present an extremely low risk, and consequently a
low probability of committing acts of violence within the prison system. Smithey was called to directly rebut
this implication. He explained that administrative segregation units do not always function in an ideal manner
and that, regardless of appellant's disciplinary history, there was a possibility that he could be moved into
the general prison population, where there was a higher risk of violent offenses occurring. Further,
Smithey's testimony was narrowly tailored to the issue the jury had to decide -- whether appellant posed
a future danger. The probative value of Smithey's testimony was not substantially outweighed by any unfair
prejudice. Therefore, the trial court did not abuse its discretion in admitting Smithey's testimony. 
Appellant's sixth, seventh, and eighth points of error are overruled.

 In his ninth point of error, appellant contends the trial court erred by failing to include his requested
instruction on mitigating evidence in the jury charge in violation of Mason v. State, 905 S.W.2d 570 (Tex.
Crim. App. 1995). 

 Mason was tried in March of 1992 for the capital murder of his wife that occurred in January of
1991. At that time, there was no statutory question for the jury to answer regarding mitigating evidence. (3) 
Thus, the trial judge crafted its own instruction -- virtually identical to the one that appellant attempted to
have included in the jury charge -- which this Court ultimately held to be constitutional. Mason, 905
S.W.2d at 576. But nowhere in this Court's opinion in Mason was it even suggested that a trial court must
give that same instruction in all capital cases. Further, at the time of appellant's punishment hearing in
January 2001, there was a statutory question for the jury to answer regarding mitigating evidence -- the
question presented in Article 37.0711, section 3(e). It states:

The court shall instruct the jury that if the jury returns an affirmative finding on each issue
submitted under Subsection (b) of this section, it shall answer the following issue:


Whether, taking into consideration all of the evidence, including the
circumstances of the offense, the defendant's character and background,
and the personal moral culpability of the defendant, there is a sufficient
mitigating circumstance or circumstances to warrant that a sentence of life
imprisonment rather than a death sentence be imposed.


Art. 37.0711 § 3(e). The plain language of this provision is mandatory; the trial court did not have the
discretion to use a different instruction. The trial court submitted this statutory instruction to the jury in
appellant's case. 

 Appellant argues that the Mason instruction is needed in order to allow the jury to consider and
give effect to mitigating evidence that goes beyond the scope of the special issues, including appellant's
mental and emotional problems. See Mason, 905 S.W.2d at 576. The present statutory question has been
held sufficient to allow the jury to consider the very factors appellant discusses. See Penry v. Johnson,
532 U.S. 782, 803, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001)(noting that current sentencing scheme allows
the jury to consider and give effect to the appellant's mental retardation and abuse as a child as mitigating
evidence); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996). Therefore, the trial court did not
err in refusing appellant's requested instruction. Appellant's ninth point of error is overruled. 

 In his tenth, eleventh, nineteenth, twentieth, and twenty-first points of error, appellant claims the trial
court erred in overruling his motion to quash the indictment and failed to properly instruct the jury because
the words, "deliberate," "acts," "criminal acts of violence," "probability," "continuing threat," and "society"
were not defined in the statute or the jury instructions. We have previously decided these claims adversely
to appellant. Feldman v. State, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002); Chamberlain v. State,
998 S.W.2d 230, 238 (Tex. Crim. App. 1999); McDuff v. State, 939 S.W.2d 607, 620 (Tex. Crim.
App.1997).

 Appellant further contends that the phrase "moral blameworthiness" was not defined. It is well
settled that if there is no statutory definition of a term, the trial court is not obligated to define the term when
it "has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such
meaning." Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003) (quoting Phillips v. State,
597 S.W.2d 929 (Tex. Crim. App. 1980)). "Likewise, when the terms used are simple in themselves and
are used in their ordinary meaning, such as in this case, it is presumed that jurors know their meaning and,
therefore, a definition in the jury charge is not necessary." Id. (citing Hogan v. State, 496 S.W2d 594
(Tex. Crim. App. 1973)); Ladd v. State, 3 S.W.3d 547, 572-73 (Tex. Crim. App. 1999). The meaning
and function of the term "moral blameworthiness," when read in context of the jury instruction, is easily
understood. See Art. 37.0711 § 3(f)(3). Appellant's tenth, eleventh, nineteenth, twentieth, and
twenty-first points of error are overruled.

 In his twelfth point of error, appellant argues the trial court erred in failing to admonish the jury
panel to refrain from reading or listening to media accounts of his case in violation of the Sixth and
Fourteenth Amendments to the United States Constitution. In his thirteenth point of error, he contends he
was denied his right to a fair trial because the Texas Legislature has failed to enact a law "requiring the trial
court to advise the jury panel prior to voir dire to not conduct their own investigation into the case" in
violation of Article I, section 15, of the Texas Constitution. Appellant never presented this particular
complaint to the trial court. Accordingly, he has failed to properly preserve this issue for our review. Tex.
R. App. P. 33.1 (a)(1).

 The jury questionnaires given to the venire members asked whether they were familiar with
appellant's case through the media. Further, during the individual questioning of each venire member, the
parties frequently inquired whether they had any knowledge of appellant's case; several venire members
informed the court and counsel that they had read or seen news items regarding appellant's case. 
Nevertheless, appellant did not object to the trial court's failure to instruct the jury panel until after the
seventh juror had been selected. Because he did not object to the trial court's failure to admonish the panel
sooner, appellant has not preserved error for our review with respect to the seven jurors who did not
receive the instruction. Tex. R. App. P. 33.1(a)(1); Etheridge v. State, 903 S.W.2d 1, 14 (Tex. Crim.
App. 1994) (holding that error is not preserved unless defendant objects at first opportunity to do so). As
for the remaining jurors, they all received the requested instruction. Appellant's twelfth and thirteenth
points of error are overruled.

 In his fourteenth point of error, appellant claims the trial court erred in instructing the jury panel that
appellant's sentence had been reversed and remanded for a new punishment hearing only. The trial court
instructed the jury regarding the unique circumstances it was dealing with:

 Our trials are divided into two parts. During the first part the jury determines the issue of
guilt or innocence, and only if a finding of guilty is determined do you proceed to the
punishment portion of the trial. Under Texas procedure, however, if some type of mistake
is made during the punishment phase of the trial and the case is reversed by an Appellate
Court, the case can be sent back to the trial court, and only the issue of punishment is
retried. That's where we will be in this particular case. Mr. Garcia will be considered
convicted, guilty of the offense of capital murder. So this jury will concentrate on one issue
and one issue only. And that will be based on your answers to certain special issues. 
Should the accused receive the death penalty or should he receive a life sentence? That's
the only thing that's different. . . .


He argues that, in effect, the trial judge alerted the jury panel that appellant had previously been sentenced
to death. First, appellant fails to consider that the trial court instructed the jury not to speculate what the
previous punishment was:

 I mentioned to you that the uniqueness of this particular case and this jury will be deciding 
the punishment issue only. You are not to concern yourselves with what the previous
punishment in this case might have been. Under law, it could have been a death sentence,
it could have been a life sentence, and I have not informed you and you are not to
speculate as to what that sentence might have been. It's of no concern of yours. The issue
before this jury will be to listen to the evidence and decide whether the evidence indicates,
whatever proper sentence is indicated by the evidence. And the Court would caution you
on that issue at this point.


Also, the above-cited portions of the trial court's instruction do not inform the jury that a previous jury had
sentenced appellant to death. Further, appellant fails to enlighten this Court how an instruction which
informs the jury of their purpose is error. See Art. 44.29(c). Finally, appellant did not object to the trial
court's instruction at the time it was made. This untimely objection was insufficient to preserve any error. 
See Tex. R. App. P. 33.1(a)(1). Appellant's fourteenth point of error is overruled.

 In his fifteenth, sixteenth, and seventeenth points of error, appellant claims the trial court erred in
allowing the State to question the jury panel about parole law in violation of the Sixth and Fourteenth
Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Texas Constitution. 
Specifically, he claims the prosecutor should not have asked numerous potential jurors whether they
believed a life sentence really meant the offender would spend the rest of their life in prison.

 Appellant correctly notes that the subject of parole is not a proper consideration for the jury when
deliberating on punishment in this capital case. See, e.g., Colburn, 966 S.W.2d at 516; Santellan v.
State, 939 S.W.2d 155, 170 (Tex. Crim. App. 1997); Jackson v. State, 822 S.W.2d 18, 27 (Tex. Crim.
App. 1990). But this Court has also recognized that it is common knowledge that inmates are occasionally
released on parole. Jackson, 822 S.W.2d at 27. Therefore, to insure that jurors do not consider this
when deliberating on punishment, a party must be allowed to examine prospective jurors about whether
they can follow an instruction forbidding consideration of parole in their deliberations. Id. The trial court
was in a position to determine the purpose of the State's questioning. Here, the State posed a line of
questioning, for example:

 [PROSECUTOR]: Let me ask you just as an aside do you think that a life sentence
means that a person will spend the rest of their life in prison?


 [Defense counsel objects and is overruled; question given again to venire member]


 [VENIRE MEMBER]:No


 Q. If you are instructed by the Judge not to consider the idea or issue of parole, could
you follow such an instruction?


 A. Yes.


 Q. Parole is when you are in prison, and because of good time or whatever you are
let out. If the Judge told you not to consider it during this process, you could do
that?


 A. Yes.


 By asking the potential jurors if they thought that life in prison meant that a person would spend the
rest of their life in prison, the State could have been attempting to discover which potential jurors had
preconceived ideas about parole. As seen in the example above, the State could have been taking steps
to insure that if the potential juror was selected and given an instruction by the trial court not to consider
the possibility of parole, they could do so. However, even if we construe the prosecutor's questions as
inquiries regarding parole, the record does not reflect that appellant was harmed by the questions. The jury
was charged with the following instruction:

 In assessing punishment you must not consider nor discuss how long the defendant would
be required to serve in prison in order to satisfy a sentence, nor the possible actions of the
Texas Board of Pardons and Paroles, and the effect thereof, as that is not a matter of
consideration for the court or jury. 


It is presumed the jury follows the court's instructions and there is no evidence the jury in this case did not
do so. Colburn, 966 S.W.2d at 520. Appellant's fifteenth, sixteenth, and seventeenth points of
error are overruled.

 In his eighteenth point of error, appellant argues the trial court erred in failing to grant his motion
for continuance based upon extensive publicity regarding the escape of the "Texas Seven." Essentially, he
claimed that the media coverage, combined with the fact that he attempted an escape from death row,
would prevent him from receiving a fair trial.

 On December 13, 2000, seven inmates escaped from the Connally Unit of the Institutional Division
of the Texas Department of Criminal Justice. On December 24, 2000, the seven fugitives allegedly
murdered a police officer in Dallas County. On January 24, 2001, six of the escapees were apprehended,
and one was found dead.

 On January 8, 2001, appellant filed a motion for continuance "for as long as necessary" based on
the media coverage surrounding the escape of the Texas Seven. A hearing was held on January 16, 2001. 
Appellant called two witnesses, both criminal-defense attorneys, who testified it would be very difficult for
appellant to receive a fair trial in light of the vast media coverage about the Texas Seven. The State called
two witnesses, a data processor and a budget analyst, who testified they believed appellant could get a fair
trial regardless of the media coverage concerning the escapees. The trial judge denied the motion for
continuance. 

 The trial court's ruling on a motion for continuance is reviewed for abuse of its discretion. Janecka
v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). To establish an abuse of discretion, there must
be a showing that the defendant was actually prejudiced by the denial of his motion. Id. Appellant's
argument is similar to one raised before this Court in Lopez v. State, 628 S.W.2d 77, 80 (Tex. Crim. App.
[Panel Op.] 1982). In that case, the appellant was charged with murdering his high school principal in
Hockley County and tried in Yoakum County on a motion to change venue. Id. at 78. The appellant filed
a pre-trial motion for continuance because of publicity related to a separate case in Travis County where
a student allegedly shot and killed his junior high school teacher. Id. at 80-81. He argued that the adverse
publicity from that case tainted the jury panel in his case. Id. at 81. The motion was supported by a
newspaper article regarding the Travis County murder, but no witnesses were heard. Id. Noting that there
was no showing that any of the prospective jurors read or were prejudiced by the article, this Court held
the trial court did not abuse its discretion in denying the motion for continuance. Id.

 Although appellant presented two witnesses who testified they believed it would be difficult for
appellant to receive a fair trial in this case, there is no showing in the record that any potential jurors were
actually prejudiced by publicity related to the Texas Seven. Throughout the voir dire process, several
venire members acknowledged that they knew about the Texas Seven, but appellant never inquired of
those individuals about their opinions regarding the Texas Seven or whether those opinions would affect
appellant's case. In light of the circumstances, appellant has not shown the trial court abused its discretion
in denying his motion for continuance. Appellant's eighteenth point of error is overruled.

 In his fourth point of error, appellant asserts the trial court erred in overruling his objections to the
admission of evidence regarding the escape of the Texas Seven. He claims this evidence should not have
been admitted because it was not relevant and because it violated Rule of Evidence 403.

 Appellant called Quijano to testify. Quijano testified that the Texas prison system was well run,
highly regulated, and generally secure. On cross-examination, the prosecutor attempted to discredit this
claim:

 Q. You're -- I mean, you're -- I'm sure you're somewhat familiar, loosely with
[appellant's] escape attempt or escape from Ellis Unit One?


 A. Yes.


 Q. And I'm sure you're familiar with at least one of those prisoners had attempted
escape before?


 A. Yes. There are a number of prisoners that have tried that more than once.


 Q. Right. And I'm sure you're familiar loosely with the recent escape from the
Connally Unit?


 A. Yes.


 [DEFENSE COUNSEL]: Just a second. Your Honor, I object to that. He knows
that's not relevant. And under Rule 403 I object to it.


 [THE COURT]: Overruled.


 [PROSECUTOR]: And I would assume you're familiar that at least one of those
prisoners has -- had attempted escape before also?


 A. In the Connally Seven?


 Q. Yes, sir.


 A. I don't know that.


 Q. Okay. You don't know one way or the other?


 A. Correct. But it's perfectly possible or probable that that is true.


 To preserve error in admitting evidence, a party must make a proper objection and get a ruling on
that objection. Tex. R. App. P. 33.1 (a)(1). Also, a party must object each time the evidence is offered
or obtain a running objection. Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Here,
appellant objected when Quijano was asked if he was familiar with the Texas Seven escape. But when
asked more specifically if he was aware that at least one of the Texas Seven had attempted an escape on
a prior occasion, appellant made no objection. (4) By failing to object again, appellant has waived review of
this ground for relief. Appellant's fourth point of error is overruled.

 In his twenty-second, twenty-third, and twenty-fourth points of error, appellant argues the 12-10
rule of Article 37.0711, section 3(a)(d)(2), which requires ten votes for the jury to return a negative answer
to the first or second special issue and at least ten votes for the jury to return an affirmative answer to the
third special issue, violates the Eighth and Fourteenth Amendments to the United States Constitution. We
have repeatedly rejected identical claims. Johnson v. State, 68 S.W.3d 644, 656 (Tex. Crim. App.
2002); Wright v. State, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000), cert. denied, 531 U.S. 1128
(2001); Chamberlain, 998 S.W.2d at 238. Appellant's twenty-second, twenty-third, and twenty-fourth points of error are overruled.

 In his twenty-fifth and twenty-sixth points of error, appellant contends that the death penalty statute
violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I sections 10,
14, and 19, of the Texas Constitution because it fails to provide for a sentence of life without parole. We
have previously rejected identical claims. Arnold v. State, 873 S.W.2d 27, 39-40 (Tex. Crim. App.
1993). Appellant's twenty-fifth and twenty-sixth points of error are overruled.


 We affirm the judgment of the trial court.


Delivered: November 12, 2003

Do Not Publish
1. 

 Article 37.0711, rather than Article 37.071, applies because appellant committed the offense in
question before September 1, 1991.
2. 

 Unless otherwise indicated, this and all future references to articles refer to the Texas Code of
Criminal Procedure.
3. 

 Article 37.071 was amended in 1991 to include the now-present statutory question for the jury to
answer regarding mitigating evidence. The savings clause of the amendment, however, limited its
effect to an offense "committed on or after September 1, 1991, if every element of that offense
occurs before that date." See Acts 1991, 72nd Leg., § 5, ch. 838, eff. Sept. 1, 1991.
4. 

 Appellant, in his brief, creates the misimpression that this entire line of questioning was objected
to.